[Cite as *State v. Brown*, 2014-Ohio-5702.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# LAKE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-L-120** |
| SHANIKA BROWN, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Lake County Court of Common Pleas, Case No. 13 CR 000221.

Judgment: Affirmed.


*Charles E. Coulson*, Lake County Prosecutor, and *Teri R. Daniel*, Assistant Prosecutor, Lake County Administration Building, 105 Main Street, P.O. Box 490, Painesville, OH 44077 (For Plaintiff-Appellee).

*Charles R. Grieshammer*, Lake County Public Defender, and *Vanessa R. Clapp*, Assistant Public Defender, 125 East Erie Street, Painesville, OH 44077 (For Defendant-Appellant).



THOMAS R. WRIGHT, J.

{¶1} This appeal is from the Lake County Court of Common Pleas. Appellant Shanika Brown was found guilty of two counts of robbery in violation of R.C. 2911.02(A)(2), a second degree felony, and R.C. 2911.02(A)(3), a third degree felony. Brown timely appeals. She claims that her convictions are against the sufficiency and manifest weight of the evidence. For the following reasons, we affirm.

{¶2} On March 9, 2013, Drew Anderson worked at Old Navy as a loss prevention officer trained to detect and prevent shoplifting. In determining whether a customer is a shoplifting threat, Anderson looks for the absence of a wallet or purse on the customer or a customer carrying a big empty purse. In regard to customer behavior, Anderson generally looks for customer attempts at finding an area to conceal merchandise, selecting merchandise without regard to price, looking at cameras, dumping hangers, removing tags, trying to get to quiet areas, and paying more attention to security than to merchandise.

{¶3} On the date in question, Anderson watched Brown enter the store on the video camera feed and saw that she did not have a purse or an outline of a wallet in her clothing. Another clip of the video store feed shows Brown going to the girl's department with a shopping cart full of clothes and stopping behind a rack of clothes. The rack obscured all but her head, and according to Anderson, Brown was searching for video cameras to determine whether this location was a safe place to conceal various pieces of clothes.

{¶4} Although one cannot see Brown's body or hands during the next several minutes, her body is slowly shifting side to side. Anderson claims that Brown is concealing various pieces of clothes by hiding them in the waistband of her pants. Eventually Brown leaves the area behind the rack and pushes her cart forward. It is apparent from the video that her midsection appears to have significantly expanded and the contents of her shopping cart have reduced. Anderson also claims that Brown was taking clothes off of hanging and discarding the hangers during this time. All of these facts led Anderson to suspect Brown of shoplifting.

{¶5}   After Brown left the store, Anderson ran out after her.  After approximately 15-20 seconds, Anderson caught up to Brown, introduced himself as a loss prevention officer for Old Navy and asked Brown to accompany him back to the store.  When Anderson first made contact with Brown he claimed it occurred within the first row of cars next to the Old Navy.  Brown responded that she would not come back in the building and then ran off through the parking lot toward a restaurant called "Melt."  Anderson ran after her keeping a 10 to 15 foot distance from her for safety.  He also informed her that he was going to call the police, a threat which he followed up on by calling a 911 dispatcher on his cell phone.  As Brown was running through the parking lot, she began to dump some of the clothes she had taken from the store.

{¶6}   Near the corner of Melt, Brown began to walk back toward Anderson, causing Anderson to stop.  However, upon Brown reaching Anderson she began to hit Anderson in the check where his cell phone was located.  Anderson testified that he believed she was hitting him to prevent him from communicating with the police.  Ultimately, Brown is unsuccessful in obtaining Anderson's cell phone and runs into Adam Gacnik, a pedestrian who happened to be taking a smoking break near the Melt.  Both Anderson and Gacnik testified that Brown ran toward a field east of the Melt and started to shed more Old Navy clothes with the tags still on them from under her clothes.  Brown stayed in the field until police arrived and apprehended her.

{¶7}   Brown did not testify or call any witnesses in her defense, or testify on her behalf.  Rather, her defense consisted of pointing out that not all of the red flags indicating shoplifting were present, such as no store alarms went off when Brown walked out of the store, and that she may have run away from Anderson because she did not know him.

3

{¶8}  Because both of Brown's assignments of error are interrelated, we review them together.  Brown asserts:

{¶9}  "The trial court erred to the prejudice of the defendant-appellant when it denied her motion for acquittal on two counts of robbery made pursuant to Crim.R. 29(A).

{¶10}  "The trial court erred to the prejudice of the defendant-appellant when it returned a verdict of guilty against the manifest weight of the evidence."

{¶11}  "In determining whether evidence is sufficient to sustain a conviction, the reviewing court asks whether reasonable minds could differ as to whether each material element of a crime has been proven beyond a reasonable doubt.  *State v. Bridgeman*, 55 Ohio St.2d 261, 381 N.E.2d 184 (1978).  If reasonable minds could differ as to whether each material element has been proven, a Crim.R. 29 motion for acquittal must be overruled.  *Id.* at 263-64.  The evidence adduced at trial and all reasonable inferences must be viewed in the light most favorable to the state.  *State v. Maokhamphiou*, 11th Dist. Portage No. 2006-P-0046, 2007-Ohio-1542, ¶20.

{¶12}  "In contrast, a manifest weight challenge requires the reviewing court to play the role of a 'thirteenth juror.'  *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997 Ohio 52, 678 N.E.2d 541 (1997).  A reviewing court should be cognizant of the fact that the jury is in the best position to assess the credibility of the witnesses.  *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus (1967).  For an appellate court to overturn a conviction as being against the manifest weight of the evidence, it must be found that 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.  The discretionary power to grant a new trial should be exercised only in the

4

exceptional case in which the evidence weighs heavily against the conviction.' *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717 (1983)." *State v. Lynch*, 11th Dist. Ashtabula No. 2013-A-0039, 2014-Ohio-1775, ¶20-21.

{¶13} Robbery under R.C. 2911.02(A)(2) & (A)(3) is defined as follows:

{¶14} "(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following: * * * (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another; (3) Use or threaten the immediate use of force against another."

{¶15} "Neither 'fleeing' nor 'immediately' is defined in the Revised Code. We begin, therefore, 'with the time-honored rule that words used by the General Assembly are to be construed according to their common usage.' *Van Fossen v. Babcock & Wilcox Co.* (1988), 36 Ohio St.3d 100, 103, 522 N.E.2d 489. To 'flee' is '[t]o run away from,' 'to try to escape,' '[t]o hasten for safety,' or '[t]o withdraw hastily.' V Oxford English Dictionary (2d Ed.1989) 1037. 'Immediately' means '[w]ith no person, thing, or distance, intervening in time, space, order, or succession,' or '[w]ithout any delay or lapse of time.' Id. at VII, 682. Black's Law Dictionary does not define the word 'flee.' It defines 'immediate' as '[o]ccurring without delay.' Black's Law Dictionary (8th Ed.2004) 764." *State v. Thomas*, 106 Ohio St.3d 133, 2005-Ohio-4106, ¶15.

{¶16} In *Thomas*, the defendant stole items from a grocery store, dropped the bags containing the stolen items outside of the store and walked to a laundry mat. *Id.* ¶2. A uniformed off-duty police officer, who was working security for the grocery store followed the defendant into the laundry mat and asked him to come back to the grocery store. *Id.* The defendant complied initially; however, upon reaching the front door of

5

the grocery store he headbutted the security guard and ran away. *Id.* The Supreme Court overturned his conviction for robbery because a significant lapse of time occurred between the theft and his flight, thereby negating the "immediately after" element to robbery. *Id.*, ¶16. The court noted that its holding was fact specific, and it noted that "[h]ad Thomas struggled with [the security guard] in an attempt to flee immediately after Thomas left the store, or after he dropped the stolen goods, or after being forced by [the security guard] to return to the store, then an ensuing injury, attempt to injure, or threat to injure might justify elevation of the offense from theft to robbery." *Id.*

{¶17} Brown's sole contention on appeal is that the evidence was insufficient to demonstrate that Brown assaulted Anderson *immediately* after the commission of the theft.

{¶18} However, R.C. 2911.02 prohibits a person from inflicting physical harm, immediately after a theft offense and unlike *Thomas*, there is no time lapse between the theft offense and Brown's flight to when she inflicted physical harm. The infliction of physical harm occurred during a continuous effort to flee that involved Brown backtracking to accost Anderson.

{¶19} Both assignments of error are without merit. The judgment of the Lake County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, P.J.,

COLLEEN MARY O'TOOLE, J.,

concur.

6